**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| CHIROPRACTORS UNITED FOR RESEARCH AND EDUCATION, LLC, et al. | ) ) ) ) | *Electronically Filed* |
| Plaintiffs, | ) ) | CASE NO:  3:15-CV-556-GSN |
| v. | ) ) | **PLAINTIFFS' JOINT REPLY IN** |
| JACK CONWAY, et al. | ) ) | **SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| Defendants | ) ) ) | |

Plaintiffs Chiropractors United for Research and Education, LLC ("**CURE**"), and Commerce Chiropractic and Rehab, P.S.C., David Seastedt, D.C., Louisville Sports and Injury Center, P.S.C., Robert Kleinfeld, D.C., E-Town Injury Center, Inc. d/b/a Metro Pain Relief Center, and David Romano, D.C. (collectively "**the Plaintiff Chiropractors**"), by counsel, in Joint Reply to the Responses filed by Defendants Kentucky Board of Chiropractic Examiners, Mark Woodward, D.C.; Frank Hedig, D.C.; Teri Beyers-Abston D.C.; Michael Seibert, D.C.; Rodney Casada, D.C. (the "**Board**") and Jack Conway, Attorney General of Commonwealth of Kentucky ("**Attorney General**"), submit the following Memorandum in support of their Motion for Preliminary Injunction:

## I. **INTRODUCTION**

In the arguments that follow, this Reply will briefly address the shortcomings of the Board's response and then turn to the more substantive Attorney General's response, addressing the issues raised (or ignored) by the Attorney General's brief and

demonstrating that 201 KAR 21:015(6)(b) ("**the Regulation**") and House Bill 153, codified at KRS 367.409 ("**HB 153**") are subject to strict constitutional scrutiny, are presumptively unconstitutional and that the Board and Attorney General have failed to meet their respective burdens of showing that the Regulation and HB 153 are necessary to serve a compelling State interest and that they are narrowly drawn to achieve that end.

## II.    ARGUMENT

### A.    The Injunction Should Be Granted and 201 KAR 21:015(6)(b) Found Unconstitutional Because the Board Has Failed to Refute Any Argument Raised by Plaintiffs in Support of Their Motion.

In essence, the Board's Response (DE 24) consists of: 1) the assertion that <u>Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.</u>, 447 U.S. 557 (1980) sets the relevant standard; 2) the failure to address <u>Sorrell v. IMS Health, Inc.</u>, __U.S. __, 131 S. Ct. 2653, 2659 (2011) (holding content and speaker based regulation of commercial speech to heightened constitutional scrutiny); and 3) conclusory statements to the effect that the Regulation passes <u>Central Hudson</u> muster. This barely qualifies as legal argument and should be disregarded by the Court.

For instance, the claim that the Regulation is constitutional because chiropractors "are still free to advertise … in a wide variety of manners"[1] borders on non-sequitur and does not address whether a less restrictive regulation could have been drafted. Similarly, the notion that the Regulation is constitutional because Plaintiffs have tolerated it for nine years[2] is without citation to precedent and illogical on its face. Blatantly unconstitutional regulations do not become valid over time.

In short, the Regulation is apparently indefensible.

---

[1] DE 24 at p. 4.
[2] DE24 at p. 4-5.

2

**B.     Enforcement of HB 153 Should Be Enjoined and Declared Unconstitutional Because the Attorney General Fails to Refute or Adequately Address Several Key Arguments.**

### 1.   <u>HB 153 is a speaker and content based restriction and thus subject to strict scrutiny, which it cannot survive.</u>

The Attorney General argues that "there is no reason not to apply" certain excerpts of Judge Simpson's reasoning from the prior anti-solicitation litigation case,[3] holding that <u>Central Hudson</u> applied to KRS 367.409 (the "Prior Solicitation Statute") "as HB 153 similarly regulates only 'solicitation in anticipation of financial gain or remuneration for the communication itself or for prospective charges for healthcare services."[4] This position is untenable because it fails to recognize the key <u>differences</u> between the Prior Solicitation Statute and HB 153. Unlike the prior statute, HB 153 is both speaker and content based and  <u>Sorrell v. IMS Health</u>, __U.S.__, 131 S. Ct. 2653, 2659 (2011) significantly changes the constitutional analysis of speaker and content based bans on commercial speech by holding that restrictions on such conduct protected by the First Amendment require "heightened judicial scrutiny". <u>Id.</u> at 2653.

Content-based restrictions are found where the statute's prohibition is "directed only at works with a specified content."  <u>Simon & Schuster, Inc. v. N.Y. State Crime Victims Bd.</u>, 502 U.S. 105, 116 (1994).  A content-based regulation *is presumptively invalid*, and the government has *the burden to rebut that presumption*.  <u>United States v. Stevens</u>, 559 U.S. 460, 468 (2010). With a content-based restriction, the government must show: (1) that the regulation *is necessary to serve a compelling state interest*: and

---

[3] <u>State Farm Mut. Auto Ins Co. v. Conway,</u> 3:13-CV -00229-CRS, 2014 WL 2618579, copy attached as Exhibit B to Plaintiffs principal brief, DE3-3.
[4] DE25 at p. 7.

3

(2) that regulation *is narrowly drawn to achieve that end*.   <u>Boos v. Barry</u>, 485 U.S. 312, 321, (1988) (emphasis added).

HB 153 distinguishes among types of commercial speech according to the content of the speech and the identity of the speaker.   It only applies to the speech of medical providers or those acting on their behalf and only if the communication is for the provision of Basic Reparation Benefits, as defined by KRS 304.39-020(2), i.e. PIP.   It does not stop insurers from speaking to recent accident victims about the provision of Basic Reparation Benefits and it does not stop medical providers from talking about anything other than PIP.

The Prior Solicitation Statute – which Judge Simpson considered simple commercial speech and analyzed under the lower standard set forth in <u>Central Hudson</u> — precluded <u>*everyone*</u> from contacting accident victims within 30 days of a motor vehicle accident for any purpose but gave an exception to the insurance industry.   The Prior Solicitation Statute thus also applied to other parties, such as tow truck operators and auto body repair shops, and it did not specifically provide that the speech be "for the provision of PIP benefits."   On that basis, Judge Simpson questioned whether the Prior Solicitation Statute's restriction was content based and found the speech at issue to be purely commercial and entitled to intermediate scrutiny under <u>Central Hudson</u>, which even the Prior Solicitation Statute could not withstand.   (DE3-3 at p. 4).   Here, HB 153 only applies to medical providers soliciting treatment to be paid by PIP benefits, and is thus both content and speaker based.

In light of recent Supreme Court precedent, HB 153's speaker and content based restrictions are fatal.

4

The Attorney General's brief fails to even mention <u>Sorrell v. IMS Health, Inc.</u>, __U.S. __, 131 S. Ct. 2653, 2659 (2011) until p. 18 of its brief and even then misses the point. <u>Sorrell</u> does not overturn <u>Central Hudson</u>, but its holding significantly changes the constitutional analysis here. <u>Sorrell</u> involved a challenge to a Vermont law regulating the sale, disclosure, and marketing of pharmacy records that revealed information about the prescribing practices of individual doctors. <u>Id.</u> at 2260. The regulatory scheme permitted the sale of the information to researchers, but prohibited the disclosure or use of the information by pharmaceutical representatives for marketing. <u>Id.</u> at 2262. The Court held that the law was "designed to impose a specific, content-based burden on protected expression. It follows that *heightened judicial scrutiny* is warranted." <u>Id.</u> at 2664 (emphasis added).[5]

As if there was any doubt that HB 153 is subject to this heightened scrutiny (meaning strict scrutiny) under <u>Sorrell</u>, the Supreme Court recently made that point crystal clear in an opinion released just as Plaintiffs were filing their principal brief:

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. *E.g., Sorrell v. IMS Health, Inc.,* 564 U.S. ——, —— – ——, 131 S.Ct. 2653, 2663–2664, 180 L.Ed.2d 544 (2011); *Carey v. Brown,* 447 U.S. 455, 462, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *Mosley, supra,* at 95, 92 S.Ct. 2286. This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. *Sorrell, supra,* at ——, 131 S.Ct., at 2664. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. **Both are distinctions drawn based on the message a speaker conveys, <u>and, therefore, are subject to strict scrutiny.</u>**

---

[5] Because the Supreme Court held that the regulations at issue did not meet intermediate level scrutiny under <u>Central Hudson</u>, the Court never defined and applied "heightened judicial scrutiny." Accordingly until <u>Reed</u>, <u>supra</u>, a plausible argument could be made that "heightened scrutiny" was not the same as "strict scrutiny."

Reed v. Town of Gilbert, Ariz., 135 S. Ct. 2218, 2227 (2015) (emphasis added).[6]
Accordingly, the Attorney General's attempts to avoid heightened/strict constitutional
scrutiny of HB 153 by claiming that "the Central Hudson analysis still controls
commercial speech, regardless of whether it is speaker or content based"[7] is simply
incorrect.

The bottom line is that the Attorney General's Central Hudson argument has been
rendered void by Sorrell and Reed v. City of Gilbert. The inescapable conclusion is that
the State has failed to meet its burden of rebutting the presumption that HB 153 is invalid
because the State cannot show that the regulation is both necessary to serve a compelling
state interest and narrowly drawn to achieve that end. See, United States v. Stevens, 559
U.S. 460, 467 (2010); Boos v. Barry, 485 U.S. 312, 321 (1988).

## 2. **The Attorney General fails to take into account that the same dollar is at issue.**

In addition to ignoring dispositive Supreme Court precedent, the Attorney
General's Response largely fails to address the most significant, dispositive fact: the
insurance industry and medical providers soliciting recent accident victims are competing
for the same dollar. Every PIP dollar not spent by an accident victim is a dollar saved by
an insurer. Solicitations by medical providers urge accident victims to spend those dollars
on their services. Ergo, the insurers and medical providers are in direct competition. The
Attorney General's claim that "Plaintiffs' allegations of disparate treatment of insurer are
irrelevant, as HB 153 does not do anything to insurers" (DE 25 at p. 11) entirely misses

---

[6] On June 18th, after Plaintiffs had cite checked the final draft of their Memorandum in support of their
Motion for Preliminary Injunction, but before it was filed on June 19th, the U.S. Supreme Court issued
Reed v. Town of Gilbert, which completely validates Plaintiffs' interpretation of the significance of Sorrell.
[7] DE 25 at p. 20.

the mark.[8]  The whole point of the statute is to give the insurance industry a 30 day head start in their competition for those PIP dollars.  That effect does not magically disappear simply because insurers are not mentioned in the statute.

### 3. The Attorney General fails to recognize the full scope of the ban by failing to address its effect on CURE.

The Response also fails to address CURE, whose mission is to educate the public about their PIP rights, with the intent that the public will exercise that right to the benefit of CURE members. It is self-evident that there can be nothing fraudulent about an organization that simply seeks to inform the public about their rights. Yet HB 153 silences CURE, which perfectly demonstrates that the statute is not in fact narrowly drawn to meet its objectives.

The Response simply asserts the conclusory statement that "no lesser restriction could adequately accomplish the Commonwealth's state interests." (DE 25 at p. 20). Nonsense.  If the state really wanted to stop abusive or fraudulent solicitations immediately after automobile accidents in a content or speaker neutral way, it could seek to ban abusive or fraudulent solicitations by anyone and everyone following an accident. Or it could ban all solicitations without regard to whether they were fraudulent or abusive, by everyone, *including insurers,* for 30 days.  Or it could seek to create contract nullifying provisions that would protect citizens against the effect of abusive or fraudulent solicitations.  Or it could create a standard for what constitutes fraud or abuse

---

[8] At the risk of anticipating a counter-argument, it is worth pointing out that the State cannot escape the problem by asserting that HB 153 is merely the first step of a process designed, ultimately, to become content and speaker neutral in later versions — that is, the State cannot argue that HB 153 is constitutional because banning fraudulent medical provider solicitations is merely the first step, and bans of fraudulent insurer solicitations will follow.  As noted in <u>Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio</u>, 471 U.S. 626, governments are entitled to attack problems piecemeal, <u>save where their policies implicate rights so fundamental that "strict scrutiny must be applied."</u>  <u>Id.</u> at 651, n.14, (emphasis added) *citing* <u>Zablocki v. Redhail</u>, 434 U.S. 374, 390, 98 S.Ct. 673, 54 L. Ed. 2d 618 (1978).

in the context of post-accident commercial speech and ban only speech that is fraudulent or abusive.[9]

But what it cannot do is enforce a law that both permits insurers to solicit profitable releases of PIP claims within 30 days of an automobile accident and silence any opposing speech.

Fundamentally, the Attorney General seeks to blur the distinction between fraudulent, abusive speech that could legitimately be seen to harm the citizens of Kentucky and lawful, truthful speech that could only conceivably harm the economic interests of the insurance industry.[10] To that end, the Attorney General claims that "it is difficult to conceive of any commercial speech that would not be either content or speaker based." (DE 25, p. 20).    But this observation gets the issue backwards.   The question is not whether the speech itself is content or speaker based. Of course it is. The issue is whether *the ban* on that speech is based on its content or the speaker.

A simple thought experiment makes this clear. Ads for Pepsi and Coke are both independently and obviously speaker and content based in that both urge consumers to buy their particular soft drink.   A hypothetical ban on ads for all soft drinks on the grounds that all such beverage ads are maudlin and annoying would be speaker and content neutral and would be viewed under the <u>Central Hudson</u> test. At the other end of the spectrum, however, a hypothetical ban on ads depicting soft drinks sold only in red and white cans (but saying nothing about ads for blue-canned sugary soft drinks) would

---

[9] Plaintiffs question the constitutionality of any restrictions targeted at medical providers who are providing truthful non-misleading advertising.

[10] Oftentimes injured citizens are left with no recourse to recover for their injuries and must rely upon government assistance for treatment.  Ironically, therefore, the state is ultimately harmed when its citizens release injury claims before the extent of the injury is known.

be content and speaker based as it would ban only Coke but not Pepsi ads.  Such a ban would be subject to strict scrutiny under <u>Sorrell</u>.

Under a strict scrutiny analysis, the State has failed to show that HB 153 serves a compelling state interest and is narrowly drawn to meet a compelling state interest. As such, the injunction is warranted.

**C.  Enforcement of HB 153 (codified at KRS 397.409) Should Be Enjoined and Declared Unconstitutional Because the "Evidence" Submitted in Support of the Statute By the Attorney General is Largely Irrelevant and Incorrect and Does Not Satisfy Strict Scrutiny.**

**1.  <u>The emphasis on irrelevant fraudulent medical providers</u>**

Whether medical providers who treat automobile accident victims are deserving of derision is irrelevant to the question of whether HB 153 is constitutional and has no bearing on whether the statute was drafted to meet its intended goals. For every "article" disparaging chiropractors trotted out by the Attorney General, Plaintiffs can cite two examples of worse behavior by automobile insurers.[11]  The Attorney General's brief goes to great lengths to falsely suggest that some of the Plaintiffs are allegedly crooks. This absurd red herring has nothing to do with whether the statute is constitutional.

For example, by citing to "auto crash rings" and attempting to link certain Plaintiffs with "PIP fraud schemes,"[12] the Attorney General implies that Plaintiffs allegedly questionable behavior in the past and thus the possibility of such behavior in the future justifies a content and speaker based restriction on speech. The Court should resist any such well-poisoning because the Attorney General has conceded that Plaintiffs have

---

[11] Attached as **Exhibit A** is the Affidavit of Kylie Parker, detailing the ease with which a "parade of horribles" concerning the automobile insurance industry practices was generated.  Like the examples cited by the Attorney General, it is utterly irrelevant.
[12] See DE 25, p. 13.

standing to bring this claim.[13] The speech that CURE and the Plaintiff Chiropractors are barred by the statute from making *is both truthful and lawful.* "The Attorney General assumes for the purposes of argument that the solicitations Plaintiffs propose to engage in are truthful and not misleading." (DE 25 p. 8, fn 2). As noted in Plaintiff's principal brief, Plaintiffs have standing to bring this action because they have, in a verified complaint, alleged their intention to carry out presumptively protected, truthful, non-misleading commercial speech advertising activities which, in view of HB 153 and the Regulation, subjects them to the threat of their bills for services being voided and/or professional discipline by the Defendants. In other words, the speech at issue *is by definition NOT the kind of fraudulent speech that the Attorney General's citations exemplify*.

For all practical purposes, the Attorney General has conceded that the statute bars and punishes lawful, non-misleading speech in the name of stopping fraud by others. That concession alone should be sufficient to find HB 153 unconstitutional.

Moreover, the Attorney General's argument assumes too much. Offensive speech is entitled to just as much protection as any other kind of speech, and just like any other kind of speech, so long as it is not misleading and where obscenity is not involved, the Supreme Court "has consistently held that the fact that protected speech may be offensive to some does not justify its suppression," Carey v. Population Servs., Int'l, 431 U.S. 678, 701 (1977), and has "specifically declined to recognize a distinction between commercial and noncommercial speech that would render this interest a sufficient justification for a prohibition of commercial speech." Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 71-72 (1983). The constitutional issue before the court is not whether PIP benefits are capable of exploitation by medical providers whose business pitches are found odious by

---

[13] DE 25, p. 5.

10

some recipients.  Of course they are, by both medical providers and insurers.  The issue is instead whether the statute illegally bars the constitutionally protected, non-fraudulent speech of law-abiding medical providers in the name of fighting fraud *as a cover for providing economic benefits to the insurance industry*.  The mud slung at Plaintiffs in the Attorney General's brief does nothing to address this issue and should be ignored by the Court.

### 2.   The misleading "evidence" offered by the Attorney General.

A significant portion of the "evidence" put forth by the Attorney General does not withstand scrutiny.  At pages 12-14 of its Response, the Attorney General tries to make the link between fraud and recent accident victims being solicited by medical providers as a justification for HB 153, stating for example, that "numerous anecdotal sources confirm that accident victims are being directly solicited for fraudulent medical treatments" and citing statistics from an in house, insurance industry lobbying group[14] to the effect that "Kentucky has seen a steady uptick in suspicious PIP claims."[15]  A quick glance at the Attorney General's supporting data[16] seems to confirm the assertion. At first blush, it looks like suspicious PIP claims are rising.  Upon closer inspection however, it becomes obvious that this insurance industry document supposedly demonstrating rising "suspicious PIP claims" (identified in the document as Questionable Claim referrals or

---

[14] The "Our Story" section of the NICB, whose data the Attorney General attaches at Exhibit 2, shows that NCIB is a captive insurance industry lobbying and PR organization.

**Today, our membership includes nearly 1,100 property and casualty insurance companies, vehicle rental companies, auto auctions, vehicle finance companies, self-insured organizations and strategic partners.**

Beyond our membership, our 380+ employees work with law enforcement agencies, technology experts, **government officials**, prosecutors, international crime-fighting organizations and the public to lead a united effort to prevent and combat insurance fraud and crime."  (emphasis added).

[15] DE 25 p. 13, emphasis added.

[16] See DE25 exhibit 2.

"QC") does nothing of the sort. In fact, <u>it demonstrates exactly the opposite</u>! The chart actually shows that "there was a *5% decrease* in QCs submitted for KY between 2012 and 2013, and a *7% decrease* between 2013 and 2014." (DE 25-2, p. 2, emphasis added). For some inexplicable reason, instead of following the convention of being read left to right, the chart cited by the Attorney General reads right to left, giving the impression of a rising trend but in fact showing a decline. Similarly, the chart at (DE 25-2 p. 3) combines internal right to left temporal data when comparing QCs by city.

And this is not an isolated misdirection in these insurance lobbying materials. The chart depicting Kentucky QCs by Loss City (DE 25 -2 p. 3) is not scaled per capita. And of course Louisville ranks highest, it has the highest population, and this says absolutely nothing about what is going on or how it would justify HB 153. Similarly, none of the data distinguishes "No Fault" states from other states. Thus the idea that Kentucky is tenth in PIP claims does not mean anything as only 12 states have PIP. (See **Exhibit B,** pg. 4-5). Nor does the chart at DE 25-2 p. 4 take into account that more people have auto insurance than other types of insurance (such as homeowners, Personal Property, Commercial Automobile, and CGL, etc.). It might be comparing apples to oranges to pineapples for all we know and should not be taken at face value. If the State can satisfy its evidentiary burden simply by mis-citing to inconclusive or incorrect data, the state will always be able to "justify" its statutes and regulations no matter how unconstitutional. This would render absurd and pointless any requirement that there be an evidentiary justification for the statute.[17] That simply cannot be the law. There must be some substance to the statistics.

---

[17] Misleading or incorrect or unintelligible data is not a sufficient basis for determining that the State has met its requirement under <u>Central Hudson</u> to demonstrate that the statute materially advances a State

Furthermore, there is nothing in the record to suggest that this "evidence" was even considered by the legislature when it passed HB 153. The only indication of what was considered is the testimony summarized in Plaintiffs' brief which makes clear that the only thing the legislature was trying to do was accomplish the same goals as the prior statute, which as Judge Simpson noted in his Opinion declaring that statute unconstitutional, failed to recognize that insurance companies *are just as capable of fraudulent actions as medical providers.* "State Farm has failed to explain why the State's interest … cannot be equally protected by the less-burdensome alternative of a statute which prohibits solicitation only by those professions or license holders that have been shown to actually engage in abusive solicitation." (DE 3-3, p. 22). The same problem applies with respect to HB 153 and negates any justification based on precluding abusive solicitations as the Attorney General's anecdotal "evidence" suggests. Simply put, the State has yet to explain why HB 153 could not have expressed the State's interest by the less-burdensome alternative of prohibiting only those professions or license holders that have been shown to actually engage in abusive solicitation. Since the Attorney General admits the speech of Plaintiffs is not misleading, the data upon which the State relies is nothing but a side-show.

In sum, this Court should discount the evidence cited in support of the Attorney General's claims as to the justifications of the legislature. At an absolute minimum, the court should re-focus its attention away from name-calling and toward the actual constitutional issues discussed above.

---

interest, and it isn't even within shouting distance of the requirement under <u>Sorrell</u> that "the State must show at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." <u>Flying Dog Brewery, LLLP v. Michigan Liquor Control Com'n</u>, 597 Fed. Appx. 342, 365 (6th Cir. 2015).

### III.   CONCLUSION

For the reasons set forth above, HB 153 is presumptively unconstitutional as a content and speaker based ban on certain commercial speech, and the State has failed to meet its burden of showing that HB 153 passes constitutional muster. Accordingly, Plaintiffs' constitutional challenge is likely to succeed on the merits and the Court should grant Plaintiffs' Motion for Preliminary Injunction, declare HB 153 unconstitutional and enjoin any enforcement of the statute.   Further, because 201 KAR 21:015(6)(b) is unconstitutional on its face, and because the Board has put forth no valid argument to the contrary, the Court should grant Plaintiffs' Motion for Preliminary Injunction, declare 201 KAR 21:015(6)(b) unconstitutional and enjoin any enforcement of the Regulation.

Respectfully submitted,


 /s/ John D. Cox
John D. Cox
Petersen S. Thomas
**LYNCH, COX, GILMAN & GOODMAN, P.S.C.**
500 W.  Jefferson St., Ste. 2100
Louisville, KY 40202
(502) 589-4215
jcox@lynchcox.com
pthomas@lynchcox.com
***Counsel for Plaintiffs***

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2015, I electronically filed the foregoing document with the clerk of the court by using the Court's CM/ECF system which will send notice of electronic filing to the following registered users:

M. Keith Poynter
Board Counsel
Kentucky Board of Chiropractic Examiners
450 S. 3rd Street
Louisville, KY 40202
keith@slftrial.com

Matt James
Assistant Attorney General
Office of Attorney General
700 Capital Ave., Ste. 118
Frankfort, KY 40601
Matt.james@ky.gov

/s/ John D. Cox

15